**Barnie HARDAWAY, Plaintiff,**

v.

**Shirley CHATER, Commissioner of the Social Security Administration,[1] Defendant.**

**No. CV 94–5841 KN(JG).**

United States District Court,
C.D. California.

Aug. 8, 1996.

---

1. Pursuant to P.L. No. 103–296, the functions of the Secretary of Health and Human Services (Secretary) in actions brought under the Social Security Act were transferred to the Commissioner of the Social Security Administration (Commissioner) effective March 31, 1995. Section 106(d) of P.L. 103–296 provides that the court may, on its own motion, substitute the Commissioner as defendant in such actions, the continuation of which shall not be affected by such substitution.

Ashton A. Cooper, Jr., Community Legal Services, Compton, CA, for Plaintiff.

Leon W. Weidman, Mark V. Mooney, Asst. U.S. Attys., Civil Div., Los Angeles, CA, for Defendant.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

#### (Social Security)

KENYON, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has reviewed the complaint, the rec-ords and files herein, and the attached Report and Recommendation of Magistrate Judge. The Court concurs with the findings and conclusions of the Magistrate Judge. Accordingly,

**IT IS HEREBY ORDERED** that

(1) the Report and Recommendation of the Magistrate Judge be, and hereby is, approved and adopted; and

(2) judgment be entered dismissing this action with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall serve copies of the Order Adopting and Judgment by United States mail on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

#### JUDGMENT

IT IS HEREBY ADJUDGED that the action is dismissed with prejudice.

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

#### (Social Security)

GROH, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable David V. Kenyon, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

Plaintiff has filed a complaint under 42 U.S.C. section 405(g) seeking review of the Commissioner's denial of supplemental security income (SSI) benefits. Defendant has answered, and the parties have filed cross motions for summary judgment. For the reasons discussed below, I conclude that the Commissioner applied the proper legal standards and that the denial of benefits is supported by substantial evidence. It will therefore be recommended that the Commissioner's decision be affirmed and that the complaint be dismissed.

## BACKGROUND

Plaintiff filed an application for SSI benefits on March 8, 1989, claiming to have been disabled since 1977 due to heart and back ailments and shortness of breath. (Administrative Record (A.R.) 68, 84.) After his application was denied, both initially and upon reconsideration, plaintiff requested and received a hearing before an Administrative Law Judge (ALJ) on June 4, 1990. (A.R. 73–83.) In an abbreviated (three-page) decision dated August 9, 1990, ALJ Steinman found that plaintiff had been working as a "drug dealer" since February 23, 1989, earning an average of $400 to $800 per month. (A.R. 42.) He concluded that plaintiff had not been unable to engage in "substantial gainful activity," as defined in 20 C.F.R. § 416.972, for any continuous period of twelve months, and therefore found plaintiff not disabled at step one of the sequential evaluation procedure.[2] (A.R. 42.) Having exhausted his administrative remedies, plaintiff filed a complaint seeking judicial review of the ALJ's decision (*Hardaway v. Sullivan*, CV 91–3114 KN(T)). Adopting the Report and Recommendation of a magistrate judge (Report and Recommendation), the District Court concluded that the Secretary's decision was not supported by substantial evidence and remanded the case "for further proceedings to develop a record either in support of the Secretary's argument that plaintiff's drug dealing constitutes substantial gainful activity or to determine whether plaintiff is disabled based upon the medical record[.]"[3] (A.R.231–32, 255.)

On remand, a second administrative hearing was conducted (in October 1992) by ALJ Parke, who denied plaintiff's claim in a decision dated August 27, 1993. (A.R.193, 197.) She found that plaintiff had engaged in SGA from at least February 23, 1989, through July 3, 1992, when he commenced a methadone treatment program. (A.R.176, 177, 183.) She further found that from July 4, 1992, through the date of her decision, plaintiff had the residual functional capacity to perform the full range of "light work" under 20 C.F.R. § 416.967(b). (A.R.176, 184). Relying on the "grids," 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202.13, the ALJ determined, at step five, that commencing on July 4, 1992, plaintiff could perform jobs

**2.** The regulations prescribe a five-step, sequential procedure. *See* 20 C.F.R. §§ 404.1520, 416.920 and *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir.1991):

At the first step, a claimant loses if he or she is engaged in "substantial gainful activity." The second step determines whether the claimant suffers from a severe impairment. If the impairment is not severe, the claimant is not disabled. If the impairment is severe, the evaluation proceeds to step three. In step three, the severe impairment is compared to the impairments listed in ... 20 C.F.R. pt. 404, subpt. P.App. 1 (1990). A claimant suffering from one of these listed impairments is presumed disabled, and no further inquiry is necessary. If the impairment is not among these listed impairments, step four determines whether the impairment prevents the claimant from performing his or her previous job. Claimants who can still perform their past work even with a severe impairment are not disabled. When claimants with severe unlisted impairments cannot perform their past work; step five determines whether they are nevertheless able to perform other work in the national economy. This final step also takes into account the claimant's age, education and work experience. [Citation omitted.]

**3.** More specifically, the court concluded that the Commissioner's decision was not based on substantial evidence because (1) the ALJ did not make any credibility findings supporting his decision to credit plaintiff's "hardly unequivocal" testimony about his earnings while rejecting plaintiff's testimony about the disabling impact of his impairments (A.R.249); (2) the ALJ failed to consider any costs, expenses or other deductions from income incurred by plaintiff in the operation of his drug-dealing business (A.R.251); and (3) the ALJ erred in determining that plaintiff had engaged in substantial gainful activity based solely on evidence of his income (in the form of plaintiff's testimony concerning money purportedly earned from drug dealing) without considering any other factors or evidence relevant to the issue of substantial gainful activity. (A.R.250, 251, 252–254.)

In the latter regard, the court noted that the governing regulations provide that the Commissioner will consider the nature of a claimant's work, how well it is performed, if the work is done under special circumstances, and the time spent at work. In the case of self-employed individuals, the Commissioner will consider, *inter alia*, the individual's work activity in terms of hours, skills, energy output, efficiency, duties; responsibilities in comparison to that of unimpaired individuals in the community engaged in a like, or similar, business; and supervisory, managerial, advisory other significant personal services. (A.R.252–253.) *See* 20 C.F.R §§ 416.973(a)–(e); 416.975(a)(1).

existing in significant numbers in the national economy. She thus concluded that plaintiff had not been disabled at any time through the date of her decision. (A.R.179, 184.) The Appeals Council denied plaintiff's request for review of ALJ Parke's decision, which stands as the final decision of the Commissioner. (A.R.160–162.)

## RELEVANT RECORD EVIDENCE

Born in 1940, plaintiff was 52 years old at the time of the supplemental hearing. (A.R.50, 184.) He completed twelfth grade and received specialized training in telecommunications. (A.R.52, 88.) Plaintiff last worked as a custodian for the Los Angeles County schools, a position he held from 1966 to 1977. (A.R.52.)

### 1. The First Administrative Hearing (June 1990)

At the first administrative hearing in June 1990, plaintiff admitted that he had an intravenous heroin habit and injected the drug two or three times daily. (A.R.53, 55, 59–60.) Several medical reports corroborated plaintiff's heroin use. (A.R.104, 106, 108, 199, 266, 277, 278, 279, 282, 286.) He testified that his heroin consumption varied "up and down" from the $200 per day amount referenced in a medical report in his file. (A.R.53, 104, 106.) He further testified that he supported his habit by stealing (A.R.53) and by "boosting" (purchasing the drug for others), in return for which he received $50 to $100 in cash or in kind. He stated that his earnings from those activities ranged from $400 to $800 per month during the one-and-a-half year period prior to June 1990. (A.R.53, 54, 55.)

### 2. The Second Administrative Hearing (October 1992)

At the second administrative hearing in October 1992, the ALJ asked plaintiff about his drug use and drug-related activities prior to the June 1990 hearing and about the testimony he gave at that hearing. In response to the ALJ's questions, plaintiff claimed that he did not remember "anything at all" about how he got money to fund his habit and how much he spent on heroin before June 1990. He also asserted that he did not recall the testimony he gave at the first hearing. (A.R. 207, 208.) Specifically, when asked whether he had testified that (1) he bought heroin for others and kept part for himself (A.R.53–55, 207); (2) he received about $50 each time he purchased for others (A.R.54, 55, 207–208); and (3) he purchased heroin for someone else about twice a week (A.R.54, 55, 208), plaintiff responded that he did not remember. (A.R. 207–208.) [4]

Shortly thereafter, in response to a question by his representative, plaintiff denied that he had ever testified that he was "getting $200 a day on a regular consistent basis." (A.R.212.) The ALJ cautioned plaintiff's representative that plaintiff's sudden recollection of his prior testimony raised serious credibility concerns and advised her to develop her questions to address those concerns. (A.R.212, 214.) Plaintiff's representative acknowledged that plaintiff had been "vague and unresponsive to many of [the ALJ's] questions" (A.R.213) but argued that plaintiff's "vagueness and confusion" were attributable to organic brain damage from drug use. (A.R.214.)

Plaintiff did testify about his drug use and activities after June 1990. He testified that he had stopped using heroin in July 1992, when he was hospitalized for a heart ailment and began methadone treatment. (*See infra,* p. 1143.) (A.R.199–200.) He further testified that his heroin consumption decreased between June 1990, the date of the first hearing, and July 4, 1992, the date he started methadone. He stated that he was using "maybe $50" per day during that period.[5] (A.R.201–202, 216, 222.) On questioning by

---

**4.** He further testified that he did not remember where he lived before or after June 1990. He did, however, recall his address as of October 1992, the hearing date. (A.R.208–209.)

**5.** Plaintiff's testimony at the second hearing was, initially, that his heroin use was "probably about the same, if anything it decreased" between the first hearing in June 1990 and his July 1992 hospitalization. (A.R.201.) The ALJ then asked if his heroin continued to cost $200 a day. Plaintiff said "no," and explained that his usage "decreased" because he "couldn't afford it." (A.R.201.) He was not explicit about precisely when his usage decreased nor by how much. Plaintiff was not sure how much heroin could be purchased with $50 but stated that it was enough for two usages. (A.R.202.)

his representative, plaintiff testified that both the $200 and $50 per day amounts reflected in his testimony were "estimates." (A.R. 216.)

On examination by the ALJ, he testified that the $50 per day habit[6] he had after June 1990 was supported by loans and gifts of drugs and money from "friends." (A.R. 202–204.) He stated that he repaid a portion of the "loans" with earnings of approximately $20–$35 a week collecting and selling scrap (metal, cans, and bottles).[7] (A.R.203–204, 215–216, 219–220.) He further testified that he would "hustle" (A.R.225) to obtain drugs and that he earned money on a regular basis by dispensing advice on auto repairs.[8] (A.R. 225–226.)

Plaintiff also testified that he received general relief of $341 a month, from which he paid $285 in rent and unspecified amounts for food, clothing, and personal items. (A.R. 210–211, 221, 224.) Plaintiff asserted that he never spent general relief money to buy drugs.[9] (A.R.225.) He also denied that he sold heroin during this period. (A.R.204–205.)

### 3. Medical Evidence

The record indicates that plaintiff sought and received treatment at Harbor–UCLA Medical Center (Harbor) in March 1989 for a heart condition.[10] (A.R.103–122.) Two months later, plaintiff underwent a consultative internal medicine evaluation at the Commissioner's behest. (A.R.124–133.) Plaintiff complained of back pain, shortness of breath on exertion, and instability on standing and walking, but denied chest pain. (A.R.124.) Dr. Feldman noted plaintiff's history of congestive heart failure but made no formal diagnosis of a heart impairment, nor did he note any functional limitations. (A.R.127.) He observed that lumbar motion was "mildly diminished" and that the Romberg sign was equivocal[11], but that the etiology of the instability was not clear. (A.R.128.) The neurological exam was otherwise normal. (A.R. 128.) A contemporaneous x-ray disclosed a normal lumbar spine with no evidence of osteoarthritis. (A.R.123.)

The Commissioner ordered a second consultative examination in September 1989. (A.R.137–139.) Remarking that plaintiff's subjective history was "vague and different to a significant extent" than that reflected in his recent medical records, Dr. Hendler concluded that plaintiff would be expected to have "only minimal limitation in function since he has no external deficits." (A.R.139.) A chest x-ray was also normal. (A.R.140.) Dr. Hendler did noté a "question of organic mental syndrome" because plaintiff appeared confused, and observed that plaintiff might have exertional difficulties which were not

---

**6.** Plaintiff estimated that he was unable to obtain his daily heroin fix once or twice weekly because he was short of funds. (A.R.215, 216, 224.)

**7.** Plaintiff testified that he sold approximately $10 worth of scrap every two days. (A.R.204.) He testified that he collected cans and bottles on Tuesdays and Fridays from a particular location, where they were left ready for him to pick up. (A.R.205, 219.) According to his testimony, this process took about an hour each time. (A.R. 220.)

**8.** Plaintiff testified that people came to him for help fixing their cars, and that he would give verbal instructions but would not do the work himself. (A.R.225.) He further testified that performed this service from one to three times a week and, although he did not charge for his services, he usually received about $15.00 in payment. (A.R.225–226.)

**9.** Plaintiff testified that he did not spend general relief money because "I have a thing about that, that's for rent and food and that's what I use it for. For the drugs I hustle or whatever you want to—I try to obtain it some other way." (A.R. 225.)

**10.** Plaintiff was admitted with symptoms of congestive heart failure: shortness of breath, episodic chest pain, and lower extremity swelling. Congestive heart failure refers to circulatory congestion resulting from the heart's inability to maintain sufficient blood supply to, and drainage from, the body as a whole or the lungs. Causes include coronary disease, heart muscle damage, hypertension, arrhythmia, and aging. 1 J.E. Schmidt Attorneys' Dictionary of Medicine at C–329 (1996 ed.). On discharge, plaintiff's diagnosis was dilated cardiomyopathy (disease of the heart's muscular wall), supraventricular tachycardia (abnormally elevated heart rate), and intravenous drug use. (A.R.103, 105, 106.)

**11.** "Romberg sign" is present in patients with syphilis of the nervous system and is manifested by unsteadiness or loss of position sense; the patient sways and may fall when asked to stand with his feet close together and eyes closed. 4 J.E. Schmidt Attorneys Dictionary of Medicine at R–185 (1996 ed.).

clearly explained in his examination. The nature of such difficulties is not specified. (A.R.139.)

In November 1989, plaintiff underwent an "intellectual appraisal" performed by Myron Howland, Ph.D., on behalf of the Commissioner. (A.R.141–153.) Plaintiff's I.Q. and memory scores placed him within the average range of intelligence, and Dr. Howland found little or no intellectual impairment. (A.R.143–144.)

Plaintiff was hospitalized briefly at Harbor in February 1992 with exacerbation of symptoms of heart disease. (A.R.265, 266.) His discharge diagnosis was mild congestive heart failure, coronary artery disease, bronchitis, and intravenous drug abuse, and his condition was "good and improving." (A.R. 267.) Plaintiff's prognosis was "good to poor if patient continues to use drugs." (A.R. 267.) One month's disability was recommended. (A.R.267.)

On July 4, 1992, approximately five months later, plaintiff was admitted to Long Beach Memorial Hospital (Memorial) complaining of shortness of breath. (A.R.286.) He was treated and placed on a medication regimen, including methadone, for management of rapid heartbeat and congestive heart disease "secondary to noncompliance and intravenous drug abuse." (A.R.286.) Plaintiff was described as "fairly resistant to treatment" and "a very problematic patient in that he has an extensive . . . thirty year history of heroin drug abuse and noncompliance." (A.R.286, 287.) Plaintiff was re-hospitalized in October 1992 for cardiac symptoms and methadone withdrawal after allowing his prescriptions to lapse for a few days. (A.R.277–282.) He was discharged after his medications were resumed and his condition stabilized. (A.R. 282.)

Dr. Bloom examined plaintiff at the Commissioner's request in April 1993.[12] (A.R. 315–321.) He noted plaintiff's history of heart disease, heroin use, and reported "low back area discomfort," but found no other major physical problems. (A.R.318.) An x-ray of the lumbosacral spine showed no abnormality. (A.R.319.) Dr. Bloom completed a functional capacities assessment form indicating that plaintiff was able to lift and carry up to 10 lbs. frequently and up to 25 lbs. occasionally; sit for 6 hours, and stand and walk for 4 hours, in an eight-hour workday; use hands and feet for repetitive pushing and pulling; occasionally bend or squat; and frequently reach. (A.R.321.)

In April 1993, Dr. Blakely, a psychiatrist and neurologist, conducted a mental status examination requested by the Commissioner. (A.R.322.) Dr. Blakely diagnosed opiate dependence and depressive disorder, not otherwise specified, with moderately severe psychosocial stressors. (A.R.325.) He felt that plaintiff's prognosis for treatment of his depression was rather poor due to his history of noncompliance with treatment, but did not note any work-related functional limitations. (A.R.325.)

Plaintiff testified that he suffered from back and chest pain, abnormal heartbeat, dizziness, headaches, weakness, and leg cramps. (A.R.55, 60–62, 217–218.)

In her decision, ALJ Parke analyzed the record at length and entered the following findings:

1. The claimant engaged in substantial gainful activity from at least February 23, 1989, through July 3, 1992.

2. The medical evidence establishes that the claimant has severe heart problems, but that he does not have an impairment or combination of impairments listed in, or medically equal to[,] one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's testimony and subjective allegations are not credible for the reasons given in the rationale portion of this decision.

4. The claimant has the residual functional capacity to perform the physical exertion requirements of work except for sitting for more than 6 hours or standing and walking for more than 6 hours in an 8–hour workday or lifting and carrying more than 10 pounds frequently or more than 20 pounds occasionally. There are no nonexertional limitations. He is able to control his use of heroin and its use does not prevent him from obtaining or maintaining employment. (20 CFR 416.945).

---

12. Dr. Bloom's report states that he initially examined plaintiff in November 1992; however, there is no corresponding medical report in the record.

5. The claimant has no relevant vocational background.

6. The claimant has the residual functional capacity to perform the full range of light work (20 CFR 416.967).

7. The claimant is 52 years old, which is defined as closely approaching advanced age (20 CFR 916.963).

8. The claimant has a high school education (20 CFR 416.964).

9. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

10. Section 416.969 of Regulations No. 16 and Rule 202.13, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

### DISCUSSION

■ Under 42 U.S.C. § 405(g), the Commissioner's decision is subject to review to determine whether: (1) the findings are supported by substantial evidence and (2) the proper legal standards were applied. *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Plaintiff challenges the Commissioner's decision on the following grounds: (1) the ALJ failed adequately to develop the record on remand, particularly with regard to the issue of substantial gainful activity (SGA); (2) the ALJ's credibility determination was not supported by the record; and (3) there was no substantial evidence supporting the ALJ's findings that plaintiff engaged in SGA prior to July 1992 nor that plaintiff thereafter re-

tained the residual functional capacity for light work. For the reasons set forth below, I conclude that plaintiff's arguments are without merit and that ALJ Parke's exhaustive decision is thoroughly supported by the record. Accordingly, it will be recommended that the Commissioner's decision be affirmed and the complaint dismissed.

### 1. *Development Of The Record*

■ Plaintiff contends that the evidence developed at the second hearing "falls way short" of the Report and Recommendation and that the ALJ erred by failing to develop (a) evidence of factors other than income involved in the SGA determination, and (b) the medical record. (Pl.Mem. at 3, 8–9.) I disagree with both of those contentions.

The District Court concluded that ALJ Steinman erred in relying exclusively on plaintiff's testimony about his earnings from "drug dealing" to determine that plaintiff was engaged in SGA. The Court noted that income alone is not dispositive on the issue of SGA, but rather that earnings in excess of the amounts set forth in the Commissioner's regulations (20 C.F.R. § 416.974(b)(2)) create a rebuttable presumption of SGA.[13] Further, the earnings guidelines do not "relieve an ALJ of the duty to develop the record fully and fairly." *Dotson v. Shalala*, 1 F.3d 571, 576 (7th Cir.1993).

In light of the shortcomings in ALJ Steinman's analysis, the District Court found that further development of the record with respect to plaintiff's activities in support of his drug habit, and possible medical bases for disability, was required. The District Court noted, however, that "the burden is on the plaintiff to prove that he is entitled to benefits ... [I]f the claimant refuses to provide the information requested by the Secretary, denial of his application for benefits is proper." (Supp. Report & Recommendation of Magistrate Judge at 4 (A.R.236)) (citing *Ciccone v. Secretary of Dept. of Health & Human Services of U.S.*, 861 F.2d 14 (2d Cir. 1988)). *See also* 20 C.F.R. §§ 416.912(a), (c) and 416.916;[14] *Terry v. Sullivan*, 903 F.2d

---

**13.** The regulations provide that average monthly earnings of over $300 in years before 1990, or $500 in years after 1990, "will ordinarily show" that a claimant has engaged in SGA. 20 C.F.R. § 416.974(B)(2)(vi), (vii).

**14.** 20 C.F.R. section 416.912(a) provides that a claimant for SSI "must prove to us that you are blind or disabled.... This means that you must furnish evidence that we can use to reach conclusions about your medical impairment(s) and, if

1273, 1275 (9th Cir.1990). As ALJ Parke's well-reasoned decision demonstrates, plaintiff failed to rebut the presumption. Indeed, he not only made no effort to do so, but also frustrated the ALJ's efforts to develop the record.

At the October 1992 hearing, ALJ Parke attempted to develop the record with respect to the issues raised in the Report and Recommendation. She received exhibits at the hearing, requested additional medical records, scheduled new consultative examinations, and gave plaintiff's representative leave to file witness affidavits and any other relevant documents after the hearing. (A.R. 191, 192, 200, 226, 227, 228.) The ALJ also examined plaintiff at length [15] and gave plaintiff's representative leave to "ask [plaintiff] any questions you wish." [16] (A.R.211.)

As to the period before the June 1990 hearing, ALJ Parke was unable to obtain the additional information contemplated by the Court's remand order on the issue of SGA because plaintiff testified that he did not remember anything about how he funded his habit before June 1990 and did not remember the testimony he gave at the initial hearing.[17] (A.R.207–209.) Plaintiff offered no other evidence of his drug-procurement activities during the pre-June 1990 period; he did, however, submit medical records from that period. As to the period from June 1990 onward, plaintiff testified on direct- and cross-examination about his heroin use, drug-procurement activities, living arrangements, health condition, and medical treatment. (A.R.199–226.) He submitted medical records for that period (A.R.264–314) but offered no other evidence on the issue of SGA.

Plaintiff is the sole source of information concerning the nature and extent of the activities he undertook, if any, to support a drug habit estimated to cost $200 per day from February 1989–June 1990 and $50 per day from July 1990–June 1992. As noted above, plaintiff has the burden to establish his entitlement to benefits at steps one through four of the evaluation process. Pursuant to the District Court's remand order, plaintiff was given every opportunity to offer testimony and other evidence to rebut the presumption that he had engaged in substantial gainful activity, to demonstrate that his activities did not qualify as substantial or gainful, and to establish an entitlement to benefits based on medical evidence. Having offered no additional evidence relevant to the issue of SGA for the period through June 1990, plaintiff cannot complain that the ALJ erred by failing to secure such evidence. Similarly, to the extent plaintiff deems the

---

material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis." 20 C.F.R. section 416.912(c) further states, "You must provide medical evidence showing that you have an impairment(s) ... If we ask you, you must also provide evidence about ... (3) Your work experience; (4) your daily activities both before and after the date you say you were disabled; ... [and] (6) Any other factors showing how your impairment(s) affects your ability to work." 20 C.F.R. section 416.916 also provides that a claimant "must co-operate in furnishing us with, or in helping us to obtain or identify, available medical or other evidence about your impairment(s). When you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case."

**15.** Plaintiff argues that the ALJ improperly asked leading questions (without identifying which questions were leading or in what way). (Pl. Mem. at 3.) This contention is frivolous. The ALJ is entitled to "look fully into the issues, question [the claimant] and the other witnesses, and accept[ ] as evidence any documents ...

[and] decide when the evidence will be presented and when the issues will be discussed." 20 C.F.R. § 416.1444. The ALJ "may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court." 20 C.F.R. § 416.1450(c). See also 5 U.S.C. § 556(b)(3) and (c)(5). Where, as here, the witness was uncooperative, the ALJ's use of leading questions was particularly appropriate. Moreover, the ALJ allowed plaintiff's representative to pose leading questions to her client. (A.R.211, 215–216, 219, 224.)

**16.** Although not an attorney, plaintiff's representative was a Legal Assistant with a legal services organization and appears to have been well-versed in the procedures and issues involved in the supplemental hearing.

**17.** See, supra, pp. 1141–42. ALJ Parke did not credit plaintiff's assertions that he did not remember anything about his pre-June 1990 activities. For reasons discussed below (see pages 1146–48, infra), I conclude that ALJ Parke offered specific, legitimate reasons, based on substantial evidence, for her credibility determination.

record less than inadequate concerning the period after June 1990, the burden to come forward with evidence was his.

With respect to the medical aspects of plaintiff's case, plaintiff offered both testimony and whatever medical records he deemed appropriate. Where it was possible for ALJ Parke to obtain evidence independent of plaintiff's efforts, such as by requesting treatment records and consultative examinations, she did so. (A.R.192, 197–199, 200.)

Based on the foregoing, I find that the ALJ fulfilled her duty to plaintiff, and complied with the District Court's remand order, by attempting to elicit additional evidence and by giving plaintiff ample opportunity to present relevant evidence, both as to his activities and his medical condition. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985) (when claimant unrepresented by counsel, ALJ must " ' scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' "); *Hart v. Sullivan*, 824 F.Supp. 903, 907 (N.D.Cal.1992) (ALJ fulfilled duty to develop record where he did not rely solely on presumption of SGA and gave plaintiff and his counsel "a fair opportunity to bring forward any relevant evidence at the hearing"); *cf., Ciccone*, 861 F.2d at 17 (claimant's failure to furnish information required by Secretary warranted denial of benefits).

## 2. *Credibility*

■ ALJ Parke found plaintiff's testimony and allegations to be of questionable credibility. Plaintiff argues that her credibility determination was not based on substantial evidence of record. I disagree.

In her decision, ALJ Parke cited a number of reasons supporting her determination that plaintiff's testimony was not credible in certain respects. She observed that it was "highly unlikely" that plaintiff had unidentified "friends" who were willing to support his drug habit (whether through gifts or loans that were not fully repaid) at a cost of approximately $300 per week. (A.R. 177, 203–204.) The ALJ was entitled to question both plaintiff's inability or unwillingness to provide further details about such an unconventional financing arrangement and its inherent implausibility. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996) (ALJ may use ordinary techniques of credibility evaluation, considering, for example, reputation for lying, prior inconsistent statements, and testimony that appears less than candid).

ALJ Parke also cited, with particular emphasis, plaintiff's alleged inability to recall the details of how he financed his heroin purchases before June 1990. (A.R.177.) The ALJ made it clear, both in her discussion with plaintiff's representative at the hearing and in her decision, that it was the selective nature of plaintiff's lack of recall that made his credibility suspect.[18] As is apparent from the testimony summarized in ALJ Parke's decision (A.R.177–78), plaintiff was able to recall in adequate detail some aspects of his life during the pre-June 1990 period while claiming no memory of highly probative details about the extent and funding of his $200 per day habit.

Given the District Court's focus on that issue in its remand order, it can safely be inferred that plaintiff knew the importance to his case, for better or worse, of his testimony on that issue. As the ALJ indicated, he had testified on this subject at the first hearing, yet claimed he could recall neither his prior testimony nor the requested information. (A.R.207–209.) Nonetheless, he recalled some aspects of his prior testimony and also offered other testimony germane to the pre-June 1990 period.[19] Plaintiff seemed, more-

---

**18.** Plaintiff protests that the ALJ failed to consider the possibility that organic brain damage had impaired his memory. I find this argument unpersuasive, for two reasons. (A.R.214.) First, there is only scant evidence in the record of the possibility of organic brain damage; the weight of the evidence, including the report by Dr. Blakely, suggests no such damage. (A.R.139, 141–144, 323–326.) There is plainly no evidence establishing that organic brain damage actually existed, nor explaining how it might affect plaintiff's memory in some areas but not in others. Furthermore, several of the record references cited by plaintiff in support of this argument merely contain observations that plaintiff is an "unreliable historian" or appears confused. (A.R.98, 137, 138.) Without more, those observations do not establish any organic basis or other reason for plaintiff's lack of recall at the hearing.

**19.** For example, the ALJ cautioned plaintiff's counsel when, shortly after testifying that he did not remember any of the statements he made at the prior hearing (A.R.208), plaintiff flatly denied

over, to recover his memory regarding his activities during the period after June 1990, when he claimed to have decreased his heroin consumption and the extent to which he bought drugs for third parties. (A.R.201–205.) The testimony about that drug purchasing was, however, contradictory, further detracting from the credibility of his testimony about the activities upon which the SGA determination is based.[20] (A.R.216, 221–222.)

Finally, ALJ Parke cited inconsistencies between plaintiff's testimony about his medical symptoms and pain, his statements to examining physicians, and objective medical evidence in the record. (A.R.179.) With respect to plaintiff's alleged low back pain and leg pain, the ALJ found no objective medical evidence of an impairment reasonably likely to be the cause of his alleged back or leg pain. Her conclusion is supported by the record.[21] She was thus not required state other reasons for disbelieving plaintiff's allegations of back and leg pain. *Bunnell v. Sullivan,* 947 F.2d 341, 345–346 (9th Cir. 1991).

With respect to plaintiff's heart condition, ALJ Parke noted that plaintiff's "statements regarding the frequency, severity, and duration of the chest pain, and its exact location and nature have been conflicting," citing several instances reflected in the record. (A.R. 181; *see also,* A.R. 103, 106, 124, 137, 139, 155, 157, 266, 277, 279, 282, 323.) She further noted that there was no medical evi-

dence substantiating plaintiff's complaints of dizziness or lost consciousness nor any record of treatment for such problems. (A.R. 181.) Finally, she noted that his subjective complaints did not appear to interfere significantly with his daily activities, among which were socializing, collecting and selling scrap, and taking the bus.[22] (A.R.182.)

The inconsistencies in plaintiff's testimony, coupled with his memory lapses and the implausibility of his account, were all discussed in the ALJ's decision. (A.R.177–178.) ALJ Parke also had the opportunity to observe plaintiff's demeanor as he testified at the second hearing and found him to be "uncooperative, resistant, and evasive." (A.R. 177.) In light of the many factors considered by the ALJ is making her credibility finding, I conclude that the ALJ supported her credibility determination, including that with respect to plaintiff's excess symptom allegations, with specific reasons based on substantial evidence in the record. *See Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir.1995) (per curiam) (factors adjudicator may consider to make credibility determinations include claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) (if claimant able to perform household chores and other activities involving many of same physical tasks as a particular job, ALJ may

---

that he had ever testified that he was getting $200 per day in heroin on a regular basis. (A.R. 212.) Plaintiff also subsequently testified that the $200 per day figure to which he testified at the first hearing was only an estimate of his usage at the time. (A.R.216.) Plaintiff was also able thereafter to recall that he had been on general relief since 1989, had always paid for his rent and his food, and that he had never "burned" a drug dealer. (A.R.221, 224.)

**20.** At the second hearing, in October 1992, plaintiff testified that he had not used heroin since starting methadone treatment in July 1992 and denied buying drugs for others, claiming that he received all of the money necessary to support his habit after June 1990 from friends in the form of gifts and loans. (A.R.177, 199–200, 202–204, 222.) However, when plaintiff's representative asked, "Do you get drugs for anybody else?", he indicated that he did so "once in a while." (A.R.216.) When the ALJ thereafter inquired, "It happens now that someone asks you to buy drugs

for them and you do so?", he said, "Yes, I purchase theirs with mine ... and they would give me some of what they have." (A.R.221.) However, when the ALJ next repeated, "And does that happen now, at the present time," plaintiff's response was, "Not now because I don't use that much." (A.R.221.) Even if plaintiff's answers to the foregoing questions are construed to pertain only to the period before he began methadone (a feasible construction due to some ambiguity in the questions (A.R.214–216)), those answers are conflicting with respect to his drug-buying activities during that period.

**21.** Plaintiff does not challenge the ALJ's findings in this regard.

**22.** Other activities described in plaintiff's testimony and disability reports were reading, light cooking, housekeeping, and shopping; personal care; giving assistance with auto mechanics, and some walking. (A.R.57–58, 87, 94, 99, 205, 211, 225–226.)

be entitled to conclude alleged pain does not prevent claimant from working). Plaintiff's contentions with regard to the credibility issue are without merit.

### 3. Substantial Evidence

#### a. Substantial Gainful Activity

■ Plaintiff contends that ALJ Parke's determination that he was engaged in SGA between February 1989 and July 3, 1992, is not supported by substantial evidence, arguing, primarily, that the Commissioner's "inability and/or failure to develop a record" invalidates her SGA finding. (Pl.Mem. at 10; see also Pl.Mem. at 3, 8–9.) ALJ Parke concluded that plaintiff financed a heroin habit valued at approximately $200 per day prior to June 1990 and a $50 per day thereafter by engaging in drug-procurement activities for others, "hustling, collecting recyclables and instructing others on how to do auto mechanic work." (A.R.178.) She concluded that, even if estimated at an average of only $50 per day for the entire period prior to July 1992, plaintiff's earnings raised the presumption that he had engaged in SGA.[23] (A.R.178, 179.) She further found that plaintiff had not offered any evidence of business expenses nor of his activities in sufficient detail to rebut the presumption of SGA raised by his earnings. I find that ALJ's findings in this regard are supported by substantial evidence.

For the reasons previously discussed, plaintiff cannot prevail on the theory that the record concerning his activities is deficient when it was plaintiff, not defendant, who failed to come forward with sufficient evidence of those activities. (See pages 1144–46, supra.) Whether plaintiff's heroin consumption is valued at $200 per day prior to June 1990 or $50 per day for the entire period, the record reflects that plaintiff did have earnings in excess of $300 per month prior to 1990 and $500 per month beginning in 1990, and that he used those earnings to support his drug habit. The evidence of plaintiff's activities in the record as it now stands does not rebut the presumption of

SGA raised by plaintiff's earnings with respect to the period before or after June 1990. In fact, the record indicates that plaintiff engaged in activities that were both "substantial" and "gainful" under relevant law.[24] The record shows that plaintiff purchased heroin for others, sometimes resorted to stealing, collected and sold scrap, and gave assistance in auto mechanics for cash. Those various undertakings, all conducted for the express purpose of funding plaintiff's heroin habit during some or all of the period between February 1989–June 1992, are similar to activities found by other courts to constitute SGA. In Hart v. Sullivan, 824 F.Supp. 903, 906 (N.D.Cal.1992), for example, the record established that the plaintiff received at least $140 worth of heroin daily in exchange for distributing heroin "simply by standing on a street corner." The court found that plaintiff had failed to rebut the presumption of SGA raised by his in-kind income and that, moreover, the "the scope of plaintiff's operation and [his] ability to avoid apprehension by the authorities" demonstrated significant physical or mental activities for purposes of establishing substantial activity. Id.

In Dotson v. Shalala, 1 F.3d 571 (7th Cir.1993), the plaintiff testified that he panhandled and stole small chainsaws and other goods to support his drug habit. Id. at 573. Acknowledging that "the record contains no evidence of any specific act of thievery," and that the ALJ "could have more fully developed the record as to the nature of [plaintiff's] criminal undertakings," the court nonetheless found that plaintiff's testimony "allowed the ALJ to reasonably conclude that the effort required to steal the chainsaws with regularity constituted SGA." Id. at 577–578.

Here, plaintiff's testimony established that he engaged in four discrete areas of activity in order to support his drug habit. Like the plaintiff in Hart, he received in-kind income in exchange for providing heroin to third parties and evaded apprehension while doing so. Although somewhat equivocal, his testi-

---

**23.** Although plaintiff characterized both the $200 per day and $50 per day figures as estimates, he did not deny that they were accurate as such. (A.R.53, 201.)

**24.** Substantial work activity involves doing significant physical or mental activities; gainful work activity is that usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(a), (b).

mony suggests that he engaged in this activity at least through July 1992, if not thereafter. Plaintiff also testified that he sometimes stole to support his habit, although there is no record as to the frequency of his theft. In addition, plaintiff regularly collected and sold scrap for cash. Finally, he apparently possessed sufficient expertise in auto mechanics that he was able to earn money on a regular basis by imparting his skills in that area to others.

The nature and extent of activities in which plaintiff engaged render this case distinguishable from *Corrao v. Shalala*, 20 F.3d 943 (9th Cir.1994) (as modified on limited grant of reh'g April 7, 1994). In *Corrao*, the court concluded that illegal activities may constitute SGA, but reversed the lower court's finding that plaintiff Corrao's purchasing of drugs for others rose to the level of SGA. *Id.* at 947, 949. The circuit court found that Corrao's in-kind income of approximately $150 worth of heroin daily established a presumption of SGA. However, the court concluded that the presumption had been rebutted because the record indicated that plaintiff's activities "did not require any significant mental or physical exertion." *Id.* at 948. Specifically, the record reflected that Corrao spent only a minimal amount of time working. When a purchaser was interested in obtaining drugs, he contacted Corrao, drove him to the purchase site, waited while the transaction was performed, and drove Corrao home—all in about twenty-five minutes' time. *Id.* Corrao did not engage in any planning and did not have an organized or extensive clientele; the record reflected that only two or three people asked the plaintiff to purchase drugs for them. *Id.* There was no other indication of "initiative, organization, responsibility, or physical or mental exertion" by Corrao. *Id.* at 949.

In this case, unlike *Corrao*, there was no evidence suggesting that plaintiff's drug-procurement activities were of such a limited and passive nature. The telling details about plaintiff's purchasing heroin for others were absent from the record because plaintiff claimed he could not remember such details at the second hearing. Under the circumstances, the gaps in the record cannot be construed in plaintiff's favor. Moreover, the evidence in this case demonstrates that plaintiff did show initiative, organization, and a considerable degree of physical and mental exertion in devising additional ways to generate income, as his circumstances required or permitted. In aggregate, plaintiff spent more than a minimal amount of time engaged in those activities, and performed them well enough to have developed a reasonably steady source of cash with which to buy heroin. In the case of the auto mechanics work, the skills involved are of a type which could be transferred to a work-setting. Thus, under governing case law and regulations, I find that the record supports ALJ Parke's finding that plaintiff was engaged in SGA from February 23, 1989–July 3, 1992.[25]

b. *Plaintiff's Residual Functional Capacity*

▪ Plaintiff asserts, with virtually no discussion or citation to the record, that ALJ Parke's medical conclusions are not supported by the record and that plaintiff cannot perform light work. (Pl.Mem. at 2, 10.) I find that assertion to be without foundation.

ALJ Parke found that plaintiff had the residual functional capacity to perform the full range of light work during the period commencing July 4, 1992. (A.R.183, 184.) She noted that there was no objective evidence of any underlying impairment of plaintiff' back and legs and hence found no physi-

25. It is of little moment that plaintiff's testimony is the only evidence in the record of his earnings and activities. As explained above, no other evidence is available. Moreover, the ALJ justified her decision to credit plaintiff's testimony about his earnings (at least as to the amount of $50 per day) while rejecting other aspects of his testimony. *See Jones v. Shalala*, 21 F.3d 191 (7th Cir. 1994), where the "only evidence in the record concerning Jones's 'gainful employment'" was his testimony about how he obtained the $60 a day needed to support his drug habit: " 'I steal it, cars, somebody at a bar.' " *Id.* at 193. The court observed:

> Jones was explicit, if laconic, that he makes all this money by theft. Surprisingly, he also receives welfare benefits, but he must be using them for his living expenses; the $21,900 is (by his own testimony, uncontradicted) to pay for his addictions. We are hard pressed to understand what kind of evidence might be presented that would rebut the presumption of gainful employment in a such a case[.] *Id.*

cal limitations in connection therewith. She correctly observed (A.R.179) that neither the medical reports of record nor the accompanying x-rays indicate any lumbar abnormality or other objective basis for plaintiff's alleged back or leg problems. (A.R. 103–133; 137–140; 264–321.) There are two references in the medical records to some reduction in low back range of motion (A.R.128, 317), but no corresponding findings or diagnoses of any kind. Because there was no objective evidence of any condition reasonably likely to give rise to the back and leg symptoms plaintiff described (*see* page 1147, *supra*), ALJ Parke was free to reject plaintiff's complaints of back and leg impairments without specific findings. I thus conclude that ALJ Parke's determination that plaintiff had no functional limitations involving his back or legs is supported by substantial evidence.

ALJ Parke did find that plaintiff had a "severe" heart condition, but one that did not preclude the performance of light work. Her thorough discussion and findings with respect to plaintiff's heart condition (A.R.179–181, 184) are well supported by the record. She notes that there is no evidence of persistent or uncontrolled cardiac symptoms while plaintiff complied with the prescribed treatment, and that plaintiff's cardiac symptoms were episodic, relatively mild, and responsive to medication. (A.R.180.) The treatment records from Harbor and Memorial hospitals indicate that plaintiff's prognosis was compromised primarily by his own noncompliance with his treatment regimen and his intravenous drug abuse, not by his heart condition *per se*. (A.R.267, 286, 287.) Those assessments were made, moreover, before plaintiff had undergone methadone treatment to control his heroin use.[26] It is therefore likely that his prognosis has improved accordingly. Even when plaintiff was hospitalized for cardiac symptoms, his treating physician at Harbor prescribed only a month's disability.

Similarly, Drs. Feldman and Hendler found that plaintiff suffered, at most, minimal exertional limitations. Dr. Bloom restricted plaintiff's work-related activities somewhat due to his history of heart disease and complaints of back pain, but nonetheless judged plaintiff able to lift, carry, and use his arms and legs in a manner commensurate with light work. *See* 20 C.F.R. § 416.967(b); Social Security Ruling (SSR) 83–10, "Titles II and XVI: Determining Capability To Do Other Work—The Medical–Vocational Rules of Appendix 2," 1983 WL 31251 (S.S.A.) at *5–*6. However, Dr. Bloom also restricted plaintiff to no more than 4 hours of standing and walking in an 8–hour day, two hours less than the "approximately 6 hours" required for the full range of light work. SSR 83–10 at *6. ALJ Parke rejected that assessment as unduly restrictive, citing the episodic and relatively mild nature of plaintiff's symptoms and plaintiff's daily activities. (A.R.181.) I find that ALJ Parke provided specific, legitimate reasons, supported by the record, for disregarding the relatively minor discrepancy between Dr. Bloom's assessment and the requirements for the full range of light work. *See Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995) (as amended); *Glasgow v. Weinberger,* 405 F.Supp. 406 (E.D.Cal.1975) (the Secretary can resolve an inconsistency in an examining physician's report in a manner consistent with the objective medical evidence in the record).[27] Moreover, because Drs. Feldman, Hendler, and Bloom were all non-treating, examining physicians, the reports of the former two doctors, neither of whom assessed any significant functional limitations, provide substantial evidence supporting ALJ Parke's functional capacity assessment. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989). Indeed, the records from plaintiff's treating physicians do not suggest permanent functional limitations of any kind. I therefore conclude that ALJ Parke's residual functional capacity assessment is supported by substantial evidence.

**26.** Plaintiff does not dispute ALJ Parke's finding that plaintiff's methadone treatment has been generally successful, despite evidence of an occasional relapse, nor her conclusion that plaintiff has demonstrated the ability to control his heroin usage since starting methadone treatment in July 1992. (A.R.182.)

**27.** It should also be borne in mind that the ability to perform sedentary work is subsumed by the finding that plaintiff can perform light work. *See* 20 C.F.R. § 416.967(a) and (b).

## CONCLUSION

For all of the reasons stated above, I find that the Commissioner's decision was based on substantial evidence of record and comported with the proper legal standards. It will therefore be recommended that the Commissioner's motion for summary judgment be granted and the complaint dismissed.

## RECOMMENDATION

**IT IS RESPECTFULLY RECOMMENDED** that the Court issue an Order:

(1) approving and adopting this Report and Recommendation; and

(2) directing that judgment be entered denying and dismissing this action with prejudice.[28]

June 28, 1996.

---

**28.** Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file objections with the above-named District Judge within 10 days (20 days, if in custody), as provided in Rule 3.1.04 and .05 of the Local Rules Governing Duties of Magistrate Judges and Fed.R.Civ.P. 72. The failure of either party to object to a particular finding of fact or conclusion of law may constitute a waiver of the right to contest the matter of appeal. *Smith v. Frank*, 923 F.2d 139, 141 (9th Cir.1991); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir.1991). A notice of appeal pursuant to the Federal Rules of Appellate Procedure should not be filed until judgment has been entered. Please note that the rules do not contemplate the filing of declarations, documents or other new factual material in support of objections, and the District Judge may decline to consider any such new matter.