Filed 10/13/25  Gevargeza v. Walgreens Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHARLIN GEVARGEZA, Plaintiff and Appellant, v. WALGREENS CO. et al. Defendants and Respondents. | B330795 (Los Angeles County Super. Ct. No. BC708167) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico and Jon R. Takasugi, Judges.  Reversed with directions.

Law Offices of Michael D. Finley and Michael D. Finley for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff and Leslie H. Helmer for Defendants and Respondents.

# INTRODUCTION

Sharlin Gevargeza worked as pharmacy manager at a Walgreens store. Gevargeza's supervisors praised her for her excellent customer service, but criticized her for not meeting Walgreens' productivity expectations. After Gevargeza's supervisors pressured her to resign, Gevargeza went on medical leave. A few months later Walgreens replaced Gevargeza and, according to Gevargeza, did not offer her a comparable position.

Gevargeza filed this action against Walgreens and one of her supervisors, Jose Vargas, for discrimination and retaliation in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)), wrongful termination in violation of public policy, retaliation in violation of Labor Code section 1102.5, and related causes of action. Walgreens and Vargas filed a motion for summary judgment or in the alternative for summary adjudication on all causes of action, making two primary arguments: (1) Gevargeza did not suffer an adverse employment action and (2) Walgreens took any adverse employment action for legitimate, nondiscriminatory, and nonretaliatory reasons. The trial court granted the motion for summary judgment.

We conclude the trial court erred in ruling there was no triable issue of fact regarding whether Gevargeza suffered an adverse employment action. We conclude, however, that Walgreens articulated legitimate reasons for its actions and that Gevargeza did not create a triable issue of material fact regarding whether Walgreens' stated reasons were a pretext for discrimination. Therefore, Walgreens was entitled to summary adjudication on Gevargeza's causes of action under FEHA. However, because Walgreens moved for summary adjudication on

2

Gevargeza's cause of action for wrongful termination in violation of public policy on the ground she did not suffer an adverse employment action, Walgreens was not entitled to summary adjudication on that cause of action. Nor was Walgreens entitled to summary adjudication on Gevargeza's cause of action for retaliation in violation of Labor Code section 1102.5: Walgreens did not show it would have taken the same actions against Gevargeza had she not engaged in the alleged whistleblower activities. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Gevargeza Takes a Leave of Absence, and Walgreens Replaces Her with a New Pharmacy Manager*

Gevargeza began working for Walgreens in 2007 as an intern pharmacist. In 2009 she became a "floater pharmacist," and in 2010 became the pharmacy manager at a Walgreens store.

Gevargeza's supervisors were Penah Dadayan, the district manager for retail and pharmacy operations, and Jose Vargas, the store manager. Gevargeza received mixed performance reviews. On the one hand, in Gevargeza's annual reviews Vargas said Gevargeza was "achieving" or "exceeding" expectations. In particular, Vargas consistently gave Gevargeza excellent reviews for customer service. Gevargeza received the highest customer feedback score in her district and one of the highest scores in the area, and Walgreens gave her an award in 2015 "for providing extraordinary customer care."

On the other hand, Vargas and Dadayan repeatedly told Gevargeza that her pharmacy was not meeting two of Walgreens' productivity metrics: the target percentage of "waiting prescriptions" (where the customer was "physically waiting in the

3

pharmacy to pick up the prescription") and the percentage of prescriptions "verified by promise time" (ready for pickup at the time promised). Gevargeza, in turn, frequently complained to Dadayan and Vargas that she could not meet the metrics because the pharmacy was understaffed.

In March 2017 Dadayan and Vargas sent Gevargeza to learn "some good practices" by working temporarily at a nearby Walgreens store that was outperforming Gevargeza's store. After working there for a week Gevargeza left on a medical leave of absence. In July 2017 Dadayan called Gevargeza and told her that Walgreens had replaced her with a new pharmacy manager. Gevargeza did not return to work for Walgreens.

B.    *Gevargeza Sues Walgreens and Vargas*

Gevargeza filed this action against Walgreens and Vargas, asserting causes of action against Walgreens under FEHA for gender discrimination, disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, harassment, and failure to prevent harassment and discrimination. She also asserted causes of action for wrongful termination in violation of public policy, intentional infliction of emotional distress, and violation of Labor Code section 1102.5. Gevargeza asserted causes of action against Vargas for gender and disability harassment and intentional infliction of emotional distress.

Gevargeza alleged that, when Vargas became store manager, he "began a constant and unrelenting campaign of discriminatory and oppressive treatment." Gevargeza alleged that she "routinely complained that she was short staffed, and therefore, not fully able to complete all of her essential work functions" and that "being short-staffed was a threat to patient

4

safety." Vargas, however, allegedly "refused to provide [Gevargeza] with adequate staffing," "became unjustifiably critical" of Gevargeza for failing to meet Walgreens' productivity expectations, and "repeatedly used demeaning, aggressive, and intimidating language" he did not use with male employees. Gevargeza also alleged that, due to Vargas's "oppressive, discriminatory and hostile tirades, and refusals to provide adequate staffing," she sought "medical treatment for the symptoms of stress and anxiety" and "went out on a stress leave at the recommendation of her doctor." Gevargeza alleged her employment was "terminated . . . and/or constructively terminated."

C. *Walgreens and Vargas File a Motion for Summary Judgment or in the Alternative for Summary Adjudication*

Walgreens and Vargas moved for summary judgment or, in the alternative, for summary adjudication on each cause of action and on Gevargeza's claim for punitive damages. First, Walgreens and Vargas argued the undisputed facts showed Gevargeza did not suffer an adverse employment action. Walgreens and Vargas submitted a declaration from Dadayan, who stated that Gevargeza "has never been terminated," that Walgreens "has never demoted . . . Gevargeza nor reduced her pay," and that Gevargeza was "still an employee of Walgreens." Dadayan stated that she "had to fill the pharmacy manager position" at Gevargeza's store after Gevargeza was on leave for a few months, but that she told Gevargeza she would find another position for her "whenever she was ready to return."

Second, Walgreens and Vargas argued that, even if Gevargeza suffered an adverse employment action, Walgreens

5

had legitimate, nondiscriminatory reasons for its actions; namely, Walgreens wanted to run its pharmacy "with high productivity and within budget." Walgreens and Vargas submitted the deposition testimony of Gevargeza, who admitted that between December 2016 and March 2017 Dadayan and Jennifer Brown (a supervisor who temporarily filled in for Vargas while he was on leave) constantly reprimanded Gevargeza for not meeting Walgreens' targets for waiting prescriptions and prescriptions verified by promised time. Walgreens and Vargas also submitted Dadayan's deposition testimony that she reviewed Walgreens' budget for staff hours at Gevargeza's store and determined the staffing at Gevargeza's store was correct for the pharmacy volume. Dadayan testified that, after Gevargeza exhausted her medical leave, Dadayan replaced Gevargeza with a new pharmacy manager "to have a smooth operation at a pharmacy." Dadayan stated that, as of September 2019, the new pharmacy manager (also a woman) was filling more prescriptions with fewer staff than Gevargeza had.

D.    *Gevargeza Opposes the Motion*

In opposition to the motion Gevargeza argued there were triable issues of material fact regarding whether she suffered an adverse employment action. She argued there was evidence from which a jury could find that Walgreens attempted to demote her or that Walgreens terminated her employment. Gevargeza submitted her deposition testimony that, shortly before she took her medical leave in March 2017, Dadayan asked her to "step down" from her position as pharmacy manager and to take a pharmacist position, which would have been a demotion. Gevargeza submitted a corroborating email from Vargas to Dadayan, where Vargas stated that, during a meeting with

6

Gevargeza, he "asked [Gevargeza] about her decision to step down" and that Gevargeza "responded that she will communicate her decision" to Dadayan. Gevargeza further testified that, when Dadayan asked her to consider "stepping down," she asked Dadayan whether she could be an "assistant pharmacist"—a position Gevargeza described as the "second pharmacist" after the pharmacy manager—at a nearby store, and Dadayan said, "No."

Gevargeza also disputed Dadayan's characterization of the conversation they had after Gevargeza went on leave. Gevargeza testified that Dadayan said she "had been replaced," that Walgreens "had no position available for [her]," and that, if Gevargeza "ever decid[ed] to come back, they may be able to accommodate [her]; they may . . . not." When counsel for Walgreens and Vargas asked Gevargeza whether Dadayan told Gevargeza that, when Gevargeza was "able to return to work," she "would have a position" as a pharmacist "but maybe at a different location," Gevargeza said, "No." Gevargeza also submitted a text message she received from Dadayan a few days after their conversation where Dadayan asked Gevargeza to return her keys to the pharmacy. Finally, Gevargeza submitted a letter she received from Walgreens a few weeks after receiving Dadayan's text message. The letter stated that Gevargeza's "paid disability leave [had] expired" and that if she did not submit, within two weeks, either a form showing she was under a doctor's care or a request for an additional leave of absence, her "employment will be considered terminated as of the day [her] paid benefits were exhausted." Gevargeza stated in her declaration that, when she received the letter, she believed Walgreens had "already terminated" her employment and that she took no action in response to the letter.

7

In response to Walgreens' contention any adverse employment actions were for legitimate business reasons, Gevargeza asserted that running a pharmacy with high productivity and within a certain budget was "not a legitimate, non-discriminatory, non-retaliatory reason." Gevargeza also argued that Walgreens' purported reasons for terminating her employment were pretextual and that Gevargeza's protected activity—raising concerns about patient health and safety—was a substantial motivating factor in Walgreens' decision to terminate her. Gevargeza submitted her deposition testimony that, during her March 2017 meeting with Vargas (when he asked her whether she would resign as pharmacy manager), she told Vargas that two new pharmacy technicians who did not have adequate training were making medical mistakes and jeopardizing patient health. Vargas told Gevargeza not to discuss her concerns with anyone except management. Gevargeza also complained to Dadayan and to Dadayan's supervisor that some employees were inappropriately giving medical advice to patients.

Finally, Gevargeza contended Walgreens' decision to terminate her employment was "directly related to Gevargeza's disability." Gevargeza cited her deposition testimony that, because of the "long understaffing for years, and all the harassment and discrimination" by Vargas, she "started having SVTs again."[1] Citing a 2013 incident when Gevargeza collapsed

---

[1]    SVT stands for supraventricular tachycardia, which is an "abnormally elevated heartrate." (*Hardaway v. Chater* (C.D. Cal. 1996) 21 F.Supp.2d 1138, 1142, fn. 10; see *Cordoba v. Dillard's, Inc.* (11th Cir. 2005) 419 F.3d 1169, 1173; *Methodist Medical*

at work and an ambulance took her to the hospital, Gevargeza contended Dadayan and Vargas knew about her disability.

E.    *The Trial Court Grants the Motion*

The trial court granted the motion for summary judgment. For each cause of action at issue in this appeal,[2] the court ruled Gevargeza failed to "raise a triable issue as to whether [her] employment was actually terminated by Walgreens" because "informing a person on extended medical leave that another employee is taking their prior position does not, without more, amount to a termination of employment." The court also found the letter Walgreens sent Gevargeza "only stated a condition under which [Gevargeza]'s employment might be terminated in the future," but "[a]bsent any additional correspondence indicating termination, there are not enough facts from which a

---

*Center of Illinois v. American Medical Security Inc.* (7th Cir. 1994) 38 F.3d 316, 317, fn. 2.)

[2]    Gevargeza also asserted causes of action for failure to accommodate, failure to engage in the interactive process, intentional infliction of emotional distress, and harassment. The trial court granted summary adjudication on each of these causes of action, and Gevargeza does not discuss these rulings or argue the court erred in making them, thus forfeiting any challenge to the order granting the motion for summary adjudication on these causes of action. (See *Potter v. Alliance United Ins. Co.* (2019) 37 Cal.App.5th 894, 911; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Because Gevargeza named Vargas only in her causes of action for intentional infliction of emotional distress and harassment, he is entitled to summary judgment on the complaint.

reasonable trier of fact could infer that there was an actual termination."

The court further ruled Gevargeza failed to create a triable issue of material fact regarding whether she suffered any other adverse employment action. The court found "Walgreens did not force [Gevargeza] to take a lower position as a condition of her continued employment," but the court did not acknowledge Gevargeza's evidence Dadayan and Vargas asked Gevargeza to resign from her position as pharmacy manager before she went on leave or Gevargeza's description of her conversations with Dadayan after Walgreens replaced her. Instead, the court cited Dadayan's statement in her declaration that in July 2019—nearly two years after Walgreens filled Gevargeza's former position as pharmacy manager—Walgreens offered Gevargeza a position as a pharmacist after Walgreens' third-party administrator for workers' compensation claims informed Walgreens that Gevargeza could not return to work as a pharmacy manager. (Gevargeza did not accept the offer.) The court ruled Walgreens' offer of a "lower-ranked position" was "part of Walgreens' effort to accommodate [Gevargeza's] disability," not an adverse employment action.[3] The court entered judgment in favor of Walgreens and Vargas, and Gevargeza timely appealed.[4]

_____

[3] Because the trial court granted the motion for summary judgment, the court did not rule on the motion for summary adjudication on Gevargeza's claim for punitive damages.

[4] Gevargeza initially filed a notice of appeal from the court's order granting the motion for summary judgment, which is not an appealable order. (See *Meinhardt v. City of Sunnyvale* (2024)

10

## DISCUSSION

### A.  *Standard of Review*

The court may grant a motion for summary judgment or summary adjudication when "'"all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."'" (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense." (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1068; see Code Civ. Proc. § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

"Where, as here, the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's [cause of action] cannot be established, the defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence needed to establish an element . . . ." (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354; see *Aguilar*, *supra*,

---

16 Cal.5th 643, 655; *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 223.)  We directed counsel for Gevargeza to file an appealable judgment and, when counsel did not do so, we dismissed the appeal.  After we dismissed the appeal, the trial court entered judgment, and Gevargeza filed a notice of appeal from the judgment.

25 Cal.4th at pp. 853-855; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."'" (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225-226; see Code Civ. Proc. § 437c, subd. (p)(2); *Aguilar*, at pp. 849-850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; see *Lemm v. Ecolab Inc.* (2023) 87 Cal.App.5th 159, 169.)

"'""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 684 (*Wawrzenski*).)

B. *The Trial Court Did Not Err in Granting the Motion for Summary Adjudication on Gevargeza's FEHA Causes of Action*

1. *Applicable Law*

FEHA makes it unlawful for an employer "to discharge [a] person from employment . . . or to discriminate against the person . . . in terms, conditions, or privileges of employment" because of the person's race, gender, or disability. (Gov. Code, § 12940, subd. (a).) FEHA also makes it unlawful for an

12

employer "to discharge . . . or otherwise discriminate against a person because the person has opposed any practices forbidden under" FEHA. (*Id.*, § 12940, subd. (h).) "'In evaluating claims of discrimination under FEHA, California courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792'" (*McDonnell Douglas*). (*Wawrzenski, supra,* 106 Cal.App.5th at p. 684; see *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) Courts also apply the *McDonnell Douglas* approach in evaluating claims of retaliation under FEHA. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); *Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 63; *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 942.)

Under the *McDonnell Douglas* approach the plaintiff has the initial burden to establish a prima facie case of discrimination or retaliation. (See *Harris v. City of Santa Monica, supra,* 56 Cal.4th at p. 214; *Yanowitz, supra,* 36 Cal.4th at p. 1042.) "To state a prima facie case of discrimination under FEHA, the plaintiff must show (1) she was a member of a protected class; (2) she was qualified for the position she sought or was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests discriminatory motive." (*Wawrzenski, supra,* 106 Cal.App.5th at p. 684; see *Guz, supra,* 24 Cal.4th at p. 355.) "To establish a prima facie case of retaliation under FEHA, an employee must show that (1) she engaged in a 'protected activity,' (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 636;

13

see *Yanowitz*, at p. 1042; *Zamora v. Security Industry Specialties, Inc.*, *supra*, 71 Cal.App.5th at p. 63.)

"A prima facie case establishes a presumption of discrimination [or retaliation]. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory [and nonretaliatory] reason. If the employer discharges this burden, the presumption of discrimination [or retaliation] disappears. The plaintiff must then show that the employer's proffered . . . reason was actually a pretext for discrimination [or retaliation], and the plaintiff may offer any other evidence of discriminatory [or retaliatory] motive." (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at pp. 214-215; see *Yanowitz*, *supra*, 36 Cal.4th at p. 1042.)

"'An employer may meet its initial burden in moving for summary judgment by presenting evidence that one or more elements of a prima facie case are lacking, or the employer acted for a legitimate, nondiscriminatory [and nonretaliatory] reason.'" (*Wawrzenski*, *supra*, 106 Cal.App.5th at p. 685; see *Guz*, *supra*, 24 Cal.4th at p. 357 [employer satisfied its initial burden on summary judgment where the employer "set forth competent, admissible evidence [citations] of its reasons, unrelated to [prohibited] bias," for its employment decisions]; *Zamora v. Security Industry Specialists, Inc.*, *supra*, 71 Cal.App.5th at p. 32.) If the employer makes either showing, ""the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing."" (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344, italics omitted; see *Zamora*, at p. 32.)

14

2.     *Gevargeza Created a Triable Issue of Material Fact Regarding Whether She Suffered an Adverse Employment Action*

For "both discrimination and retaliation claims, an adverse employment action is one that 'materially affects the terms, conditions, or privileges of employment.'" (*Bailey v. San Francisco Dist. Attorney's Office*, *supra*, 16 Cal.5th at p. 637; see *Yanowitz*, *supra*, 36 Cal.4th at p. 1051; *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 91 (*Light*); *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1161-1162.) To show Gevargeza could not prove Walgreens subjected her to an adverse employment action, Walgreens and Vargas relied primarily on Dadayan's statements in her declaration that Walgreens never demoted Gevargeza or reduced her pay and that Gevargeza was still an employee of Walgreens. Gevargeza contends there was a triable issue of material fact regarding whether she suffered an adverse employment action—particularly because Walgreens sent her a letter stating the company considered her employment terminated the day her leave benefits expired. We agree with Gevargeza the evidence she submitted would allow a reasonable trier of fact to find Walgreens adversely and materially affected the terms and conditions of her employment.[5]

The "phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide."

---

[5]     We assume, without deciding, that Walgreens met its initial burden on summary adjudication.

15

(*Yanowitz*, *supra*, 36 Cal.4th at p. 1054; see *Bailey v. San Francisco Dist. Attorney's Office*, *supra*, 16 Cal.5th at p. 637; *Featherstone v. Southern California Permanente Medical Group*, *supra*, 10 Cal.App.5th at p. 1162.)  Thus, an adverse employment action includes not only "so-called ultimate employment actions such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." (*Yanowitz*, at pp. 1053-1054; see *Lowry v. Port San Luis Harbor Dist.* (2025) 109 Cal.App.5th 56, 65; *Light*, *supra*, 14 Cal.App.5th at pp. 91-92.)  Determining what type of treatment constitutes an adverse employment action "is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee. Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach" of FEHA.  (*Yanowitz*, at pp. 1054-1055; see *Light*, at pp. 91-92.) "[W]e consider the totality of the circumstances to determine whether the plaintiff has suffered an adverse employment action." (*Light*, at p. 92; see *Yanowitz*, at p. 1036.)

A reasonable trier of fact could find that, notwithstanding Dadayan's statements, Walgreens conditioned Gevargeza's continued employment on a demotion.  (See *Guz*, *supra*,

16

24 Cal.4th at p. 355 [adverse employment action includes demotion]; *Thomas v. Department of Corrections* (2000) 77 Cal.App.4th 507, 511 [a "materially adverse change might be indicated by . . . a demotion"].)  Viewed in the light most favorable to Gevargeza (see *Aguilar*, *supra*, 25 Cal.4th at p. 844), the evidence would allow a jury to find Dadayan and Vargas pressured Gevargeza to resign from her pharmacy manager position after criticizing her for not meeting Walgreens' productivity expectations and temporarily reassigned her to a different position.  When Gevargeza asked whether she could work as the assistant pharmacist in a different store—the "second" pharmacist after pharmacy manager—Dadayan told her she could not.  While Gevargeza was on leave, Dadayan replaced her with a new pharmacy manager, told Gevargeza that Walgreens did not have a position for her, and said Walgreens "may" have a position for her if she wanted to continue her employment.

Walgreens may not have explicitly told Gevargeza that it was demoting her from pharmacy manager to a lesser position, but a factfinder could easily conclude Walgreens required Gevargeza to accept a demotion if she wanted to remain employed.  (See *Yanowitz*, *supra*, 36 Cal.4th at p. 1058 ["a retaliatory course of conduct rather than a discrete act of retaliation . . . may constitute an 'adverse employment action' even if some or all of the component acts might not be individually actionable"]; *Light*, *supra*, 14 Cal.App.5th at p. 92 ["when a plaintiff alleges a series of actions that comprise a course of conduct, we [do] not examine each individually," but "consider the totality of the circumstances to determine whether the plaintiff has suffered an adverse employment action"].)

Under Gevargeza's version of the events, she held the pharmacy manager position for many years, was asked to resign, was transferred temporarily to a position with less responsibility, lost her position, and did not receive an offer of a comparable position. (See *Simers v. Los Angeles Times Communications LLC* (2018) 18 Cal.App.5th 1248, 1279-1280 [employee's reassignment from columnist to reporter was an adverse employment action because it entailed "'a change in status [and] a less distinguished title,'" as well as a "'significant change in job responsibilities'"]; *Thomas v. Department of Corrections*, *supra*, 77 Cal.App.4th at p. 511 [a demotion may be "evidenced by a . . . less distinguished title" or "significantly diminished material responsibilities"]; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 374 ["[r]eduction in authority and negative performance reviews . . . constitute adverse employment action"].) Indeed, there was no evidence Walgreens ever offered Gevargeza a position comparable to pharmacy manager after she took her leave of absence. (Cf. *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 393 ["A transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm."].)

The trial court ruled Walgreens did not demote Gevargeza because it offered her a "lower-ranked position" as a pharmacist "as part of Walgreens' effort to accommodate [Gevargeza's] disability." The company's decision to remove Gevargeza from her position and not offer her a comparable one, however, was "reasonably likely to impair" Gevargeza's "job performance and prospects for advancement or promotion." (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1054-1055.) That was all Gevargeza had to show on the adverse employment action element. (See *Light*,

*supra*, 14 Cal.App.5th at p. 93 [employer's contention that reducing the employee's scheduled hours to zero "was a normal seasonal occurrence" was "irrelevant to the issue of whether it was an adverse employment action"].)

Second, Walgreens did not offer Gevargeza a pharmacist position until 2019—nearly two years after it replaced her as pharmacy manager. Even if, as the trial court ruled, Walgreens did not demote Gevargeza in 2019 by offering her a "lower-ranked position," that does not mean Walgreens did not effectively demote her two years earlier. According to Gevargeza, Dadayan did not offer or guarantee her any position when Dadayan removed her in 2017, and Dadayan had previously rejected her request for an assistant pharmacist position. A reasonable trier of fact could find Walgreens materially affected the terms and conditions of Gevargeza's employment for at least the two years before Walgreens offered her a new position. (See *Light, supra,* 14 Cal.App.5th at p. 93 [while an employee's continued employment and subsequent "promotions and pay raises . . . may ultimately be relevant to the issue of damages," they "do not mean [the employee's] employment was not materially and adversely affected by the [the employer's] earlier actions"].)

A reasonable trier of fact could also find Walgreens terminated Gevargeza's employment. (See *Arteaga v. Brink's, Inc., supra,* 163 Cal.App.4th at p. 356 [termination of employment is an adverse employment action].) "The test of whether or not an employee has been discharged depends upon 'the reasonable inference that the employee[ ] could draw from the language used by [or conduct of] the employer.'" (*Superior Farming Co. v. Agricultural Labor Relations Bd.* (1984) 151 Cal.App.3d 100, 114; see *N.L.R.B. v. Champ Corp.* (9th Cir. 1990) 933 F.2d 688, 692.) "'No set words are necessary to

19

constitute a discharge; words or conduct, which would logically lead an employee to believe his tenure had been terminated, are in themselves sufficient.'" (*Champ Corp.*, at p. 692; see *Percival v. National Drama Corp.* (1919) 181 Cal. 631, 637; *Warner Bros. Pictures, Inc. v. Bumgarner* (1961) 197 Cal.App.2d 331, 353; see also *Reich v. State Credit Inc.* (N.D. Ohio 1995) 897 F.Supp. 1014, 1016 [despite a supervisor's statement he "could not fire" the employee, there were "unresolved issues of material fact" regarding whether the employee believed "she had been discharged," where the supervisor called the employee "a 'dirty double-crossing liar'" and told her "to leave, to clear out her desk, and to try and find another job"].)

After Dadayan removed Gevargeza from her position, she asked Gevargeza to return her keys. (See *Pinder v. John Marshall Law School, LLC* (N.D.Ga. 2014) 11 F.Supp.3d 1208, 1223 [plaintiffs demonstrated a triable issue of material fact regarding whether they were terminated with evidence their employer required them to leave their offices and return their keys].) Walgreens later sent Gevargeza a letter stating her employment would be "considered terminated" the date her paid benefits expired if she did not, within two weeks, request additional leave time or submit certification she was under a doctor's care. A reasonable trier of fact could find Walgreens' words and conduct led Gevargeza to believe that, two weeks after she received the letter, she was no longer employed.

The trial court ruled that the letter merely stated conditions "under which [Gevargeza's] employment might be terminated in the future" and that a reasonable trier of fact could not find Walgreens terminated Gevargeza's employment "[a]bsent any additional correspondence indicating termination." But the letter did not say Gevargeza's employment "might" be

20

terminated if certain conditions occurred; it stated her employment would be "considered terminated." And it was undisputed those conditions existed. Gevargeza stated in her declaration she took no action after receiving the letter, and Walgreens submitted no evidence she either requested additional leave time or submitted a doctor's certification by the deadline stated in the letter. Moreover, because the letter did not give Gevargeza the option to return to work, Gevargeza could reasonably have believed that (consistent with what she says Dadayan told her) there was no longer a position for her at Walgreens and that, two weeks after she received the letter, she would no longer have a job at Walgreens.

> 3. *Gevargeza Did Not Create a Triable Issue of Material Fact Regarding Whether Walgreens' Reasons for Its Employment Actions Were Legitimate or Pretextual*

Walgreens argues that, even if Walgreens subjected Gevargeza to an adverse employment action, the trial court properly granted its motion for summary adjudication on Gevargeza's FEHA causes of action on Walgreens' alternative ground; namely, Walgreens had legitimate business reasons for its employment decisions. Walgreens is correct on this point.

"'If the employer puts forth a legitimate basis for the adverse employment action, the burden of production shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a pretext for unlawful animus in order to avoid summary judgment.'" (*Wawrzenski, supra*, 106 Cal.App.5th at p. 685; see *Ortiz v. Dameron Assn.* (2019) 37 Cal.App.5th 568, 577-578; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591.) The plaintiff

21

need not show "'that discriminatory animus was a "but for" cause of an adverse action, only that it was a "substantial motivating factor.""" (*Wawrzenski*, at p. 685; see *Lin v. Kaiser Foundation Hospitals* (2023) 88 Cal.App.5th 712, 722.) But an "'employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory'" or retaliatory. (*Wawrzenski*, at p. 685; see *Guz, supra*, 24 Cal.4th at p. 361.)

### a. *Walgreens Showed a Legitimate Reason for Its Employment Decisions*

Walgreens argues it had a legitimate reason for any adverse employment action: Walgreens' "legitimate business interest in enforcing pharmacy performance expectations to ensure prescriptions are processed and filled timely." "A reason is "'legitimate'" if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination [or retaliation].'" (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2, italics omitted; see *Guz, supra*, 24 Cal.4th at p. 358; *Wawrzenski, supra*, 106 Cal.App.5th at p. 685.) The employer's "reasons for termination, if nondiscriminatory, need not be wise or correct." (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 425; see *Guz*, at p. 358.)

Dadayan testified she suggested Gevargeza pursue a position other than retail pharmacy manager because Gevargeza was complaining she could not meet Walgreens' productivity

22

expectations without additional staff.[6]  Dadayan similarly stated she sent Gevargeza to work in a different Walgreens store temporarily because Gevargeza's store was not meeting Walgreens' productivity expectations.  Dadayan said she wanted Gevargeza to learn better management practices from a store that, according to Dadayan, filled a similar number of prescriptions as Gevargeza's store, but had a more appropriate number of waiting prescriptions and prescriptions verified by promised time.  Dadayan also testified she removed Gevargeza from her position as pharmacy manager after Gevargeza's leave benefits expired so the pharmacy would run smoothly. Walgreens' purported reasons for its employment decisions were facially unrelated to discrimination or retaliation, and therefore were legitimate under the *McDonnell Douglas* analysis.  (See *Zamora v. Security Industry Specialties, Inc.*, *supra,* 71 Cal.App.5th at p. 56 [employee's "failure to meet performance standards" is a legitimate reason for an adverse employment action]; *Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1149 [that an employee's "job performance did not meet [employer's] demanding standards" was a legitimate business reason to terminate the employee's employment]; *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 966 [that an employee "continued to perform below expectations" was legitimate business reason for an adverse employment action].)

---

[6]      Dadayan denied attempting to demote Gevargeza.  She said she suggested Gevargeza work in a Walgreens "specialty pharmacy," which would better suit Gevargeza's customer service skills and "actually [would be] a promotion."

23

b. *Gevargeza Did Not Present Sufficient Evidence of Pretext*

"[G]enerally, 'pretext may be demonstrated by showing "'the [employer's] proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'"'" (*Zamora v. Security Industry Specialties, Inc.*, *supra*, 71 Cal.App.5th at p. 56; see *Soria v. Univision Radio Los Angeles, Inc.*, *supra*, 5 Cal.App.5th at p. 594.) ""Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before [the] termination.'"'" (*Zamora*, at pp. 56-57; see *Soria*, at p. 594.) However, it "is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive." (*Zamora*, at p. 56; see *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 862.) "'Circumstantial evidence of "pretense" must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate" on an improper basis.'" (*Zamora*, at p. 34; see *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1182.)

In the trial court Gevargeza argued Walgreens sought to force her to resign and terminated her employment because of her disability. The problem for Gevargeza is that she did not present any evidence Walgreens knew she suffered from a disability or medical condition before she went on medical leave. "'An adverse employment decision cannot be made "because of" a disability, when the disability is not known to the employer. Thus, in order to prove [a discrimination] claim, a plaintiff must

24

prove the employer had knowledge of the employee's disability when the adverse employment decision was made.'" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1008; accord, *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247; see *Soria, supra*, 5 Cal.App.5th at pp. 590-591 [to show "discriminatory animus was a substantial cause of the adverse employment action, an employee must show that the employer had knowledge of the employee's protected characteristic"].)

Gevargeza contended Dadayan and Vargas were "aware of [Gevargeza's] medical issues," but she did not submit admissible evidence that would permit a reasonable factfinder to make that finding. Dadayan and Vargas testified that Gevargeza never told them she had a medical condition and that they did not learn Gevargeza had any kind of medical condition before she went on leave. Gevargeza did not submit any conflicting evidence (for example, that she told them she suffered from SVTs).

The only evidence Gevargeza submitted was testimony by Dadayan and Gevargeza that they were aware of the 2013 incident where Gevargeza went to the hospital in an ambulance. Evidence Gevargeza went to the hospital once during the nine years she worked at Walgreens did not meet Gevargeza's burden to show Walgreens knew she had a disability and discriminated against her because of it. (See *Avila v. Continental Airlines, Inc.*, *supra*, 165 Cal.App.4th at p. 1249 ["Informing [the employer] merely that plaintiff had been hospitalized was not sufficient to put [the employer] on notice that plaintiff was suffering from a qualifying disability."]; see also *Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1008 ["'While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer

25

when the fact of disability is the only reasonable interpretation of the known facts.'"].) Moreover, there was no dispute that, after the 2013 incident, Dadayan told Gevargeza that she could take time off, but that Gevargeza chose not to, and that Gevargeza returned and worked for Walgreens for several years before Dadayan and Vargas began pressuring her to resign from her position as pharmacy manager. Gevargeza's assertion Walgreens was motivated to remove her because Gevargeza had to go to the hospital one time several years earlier is speculative and not a reasonable inference. (See *Apex Solutions, Inc. v. Falls Lake National Ins. Co.* (2024) 100 Cal.App.5th 1249, 1257 ["because speculation is not evidence," it "'cannot create a triable issue of material fact'"]; *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 226 ["'[r]esponsive evidence that "gives rise to no more than mere speculation" is not sufficient to establish a triable issue of material fact'"].)

Dadayan knew Gevargeza had a medical condition when she decided to remove Gevargeza from her position a few months after Gevargeza went on medical leave. However, "temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." (*Arteaga v. Brink's, Inc., supra*, 163 Cal.App.4th at p. 353; see *Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 932.) "This is especially so where the employer raised questions about the employee's performance *before* he [or she] disclosed his [or her] symptoms, and the subsequent termination was based on those performance issues." (*Arteaga*, at p. 353.) According to Gevargeza, Dadayan and Vargas had already criticized her for poor productivity, asked her to resign from her position, and at least temporarily transferred her before she went on leave.

26

Dadayan also waited to replace Gevargeza until after her leave benefits expired. Standing alone, the proximity between when Gevargeza went on her leave of absence and when Walgreens removed her from her position did not create a triable issue of material fact on the issue of pretext. (See *id.* at p. 354 [that the employer discharged the employee one week after the employee disclosed a physical disability was insufficient evidence of pretext, where the employee's "performance had long been the subject of criticism, he had been suspended on one occasion, and . . . [a]*fter* the disclosure, no one made any negative remarks about his condition"].)[7]

Gevargeza also argues Walgreens' stated reasons for its actions were a pretext for gender discrimination. She contends Vargas repeatedly "insulted and mistreated" her, "often with specific reference to her being female." She also contends that Vargas "was harder on female employees than he was on male employees and that he made many misogynistic comments." Gevargeza did not, however, submit sufficient evidence to create a triable issue of material fact. Gevargeza testified about only one incident: In 2014 she fell in the pharmacy and injured herself. When Vargas drove her to a clinic, he said, "Women, they're just so fragile. They're just crying babies, you know. A little thing, they start crying. And where I'm from real men, they wreck their arms, and they just wrap it up, and they go back to work." Gevargeza also submitted the declaration of a coworker,

---

[7] Because Gevargeza failed to create a triable issue of material fact regarding whether Walgreens' motive for its employment decisions was discriminatory, Walgreens was entitled to summary adjudication on Gevargeza's causes of action for discrimination and failure to prevent discrimination under FEHA.

Katherine Bui, who described Vargas as "belittling and demeaning" and "abrupt and abrasive during stressful times." Bui stated that she saw "other employees crying after having meetings with" Vargas, that he "mostly treated his shift Leads poorly," that "[m]ost all of the shift Leads were female," and that "most of them were in tears on many occasions." Bui's declaration may show that Vargas treated employees (most of whom were female) poorly, but it does not show Vargas treated female employees less favorably than male employees. (Cf. *Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519 ["Evidence that an employer treated 'similarly situated' employees outside the plaintiff's protected class ""more favorably"" is probative of the employer's discriminatory or retaliatory intent."].)

Other evidence undermined any inference Walgreens' adverse employment actions were motivated by Gevargeza's gender. Though Vargas and Dadayan criticized Gevargeza for not meeting productivity goals, they otherwise rewarded her job performance. Vargas nominated her for Walgreens' highest employee award in 2015. Dadayan (a woman) recruited and promoted Gevargeza, and she later replaced Gevargeza with another woman. (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 272 [where """"the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive"""]; see also *Doe v. Software ONE, Inc.* (2022) 85 Cal.App.5th 98, 104 ["'same actor evidence will often generate an inference of nondiscrimination'"]; *Coghlan v. American Seafoods Co. LLC.* (9th Cir. 2005) 413 F.3d 1090, 1098 [the same-actor inference "is a 'strong inference' that a court must take into account on a

28

summary judgment motion"]; see also *Guz, supra*, 24 Cal.4th at p. 366 [where "an age-protected worker is directly replaced by a person not significantly younger, there may be no basis to suspect a motive of prohibited bias"].)  Because the evidence was insufficient to permit a rational inference Walgreens' actual motive was gender discrimination (see *Guz*, at p. 361), Gevargeza did not meet her burden to create a triable issue of fact regarding pretext.

Gevargeza also argued in the trial court that Walgreens' purported reasons for terminating her were a pretext for retaliation.  In particular, she contended Vargas and Dadayan began pressuring her to resign from her position as pharmacy manager after Gevargeza complained that the pharmacy was understaffed, that employees were committing "medical errors," and that some employees were giving medical advice.  But even if Walgreens wanted to demote her or terminate her employment because she raised concerns about patient safety, such evidence would not support a retaliation cause of action under FEHA.

FEHA's retaliation provision makes it an unlawful employment practice ""to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under""" FEHA.  (*Wawrzenski, supra*, 106 Cal.App.5th at p. 699; see Gov. Code, § 12940, subd. (h); *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381 ["'For protection under the "opposition clause," an employee must have opposed an employment practice made unlawful by the statute.'"].)  As the Supreme Court explained in *Yanowitz, supra*, 36 Cal.4th 1028, "an employee's conduct may constitute protected activity for purposes of the antiretaliation provision of the FEHA not only when the employee opposes conduct that ultimately is determined to be

29

unlawfully discriminatory under the FEHA, but also when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory." (*Yanowitz*, at p. 1043; see *Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1535 ["to show he engaged in protected activity," the employee had to show he "'oppose[d] conduct' he 'reasonably and in good faith believe[d] to be discriminatory'"].) Opposing practices an employee "view[s] as unwise or even improper . . . is not enough to make his [or her] opposition a protected activity" for purposes of FEHA. (*Dinslage*, at p. 382.)

Gevargeza may have been opposing conduct she believed was improper or unlawful (and her conduct may have been protected under other laws—an issue we need not decide). But she was not opposing or objecting to conduct that was unlawful under FEHA or that she reasonably could have believed was a discriminatory employment practice. (See *Dinslage v. City and County of San Francisco*, *supra*, 5 Cal.App.5th at p. 383 [employee's "advocacy for the disabled community and opposition to elimination of programs that might benefit that community" were not protected activities under FEHA because "discrimination by an employer against members of the general public is not a prohibited *employment* practice under the FEHA"].) Therefore, Gevargeza failed to create a triable issue of material fact regarding whether Walgreens' purported reasons for its employment decisions—even if not the only reasons for its decisions—were a pretext for retaliating against her for opposing conduct she believed was discriminatory. (See *Arnold v. Dignity Health*, *supra*, 53 Cal.App.5th at p. 426 ["'disbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably give rise to

an inference that the motivation was a prohibited one'" under FEHA]; *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1532 [same].)

C.     *The Trial Court Erred in Granting the Motion for Summary Adjudication on Gevargeza's Cause of Action for Wrongful Termination in Violation of Public Policy*

The trial court granted the motion for summary adjudication on Gevargeza's cause of action for wrongful termination in violation of public policy on the ground Walgreens did not terminate Gevargeza's employment. This was error. As discussed, there were triable issues of material fact regarding whether Walgreens terminated Gevargeza's employment. Because Walgreens did not move for summary adjudication on this cause of action on another ground, Walgreens was not entitled to summary adjudication.

Walgreens argues we may nonetheless affirm the trial court's order granting summary adjudication on this cause of action because it is "derivative" of Gevargeza's FEHA causes of action. Because Walgreens did not make this argument in the trial court, however, it is forfeited. (See *Doe v. Roman Catholic Archbishop of Los Angeles*, *supra*, 70 Cal.App.5th at p. 672 [defendant forfeits arguments on appeal by not making them "in its motion for summary judgment"]; *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 155 ["arguments not raised in summary judgment proceedings" are forfeited].)

31

D.   *The Trial Court Erred in Granting the Motion for Summary Adjudication on Gevargeza's Cause of Action for Violation of Labor Code section 1102.5*

Because the trial court erred in ruling there was no triable issue of material fact regarding whether Walgreens subjected Gevargeza to an adverse employment action, the court also erred in granting the motion for summary adjudication on Gevargeza's cause of action under Labor Code section 1102.5 for this reason. (See *Whitehall v. County of San Bernardino* (2017) 17 Cal.App.5th 352, 366 [in "determining whether a plaintiff suffered an adverse employment action" under Labor Code section 1102.5, "we employ the same standard of materiality that the California Supreme Court held should be applied to employment retaliation claims made under" FEHA]; see, e.g., *Francis v. City of Los Angeles* (2022) 81 Cal.App.5th 532, 540-541.)  Walgreens appears to argue it was entitled to summary adjudication on Gevargeza's Labor Code section 1102.5 cause of action for the same reasons it was entitled to summary adjudication on her FEHA causes of action:  Walgreens had legitimate reasons for its employment decisions, and Gevargeza cannot "carry her burden of showing pretext."  For Gevargeza's cause of action under Labor Code section 1102.5 cause of action, however, Walgreens did not meet its burden on summary adjudication.

Labor Code section 1102.5 "provides whistleblower protections to employees who disclose wrongdoing to authorities." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*).)  In particular, Labor Code section 1102.5, subdivision (b), "prohibits an employer from retaliating against an employee for sharing information the employee 'has reasonable cause to believe . . . discloses a violation of state or

32

federal statute' or of 'a local, state, or federal rule or regulation' with . . . a person with authority over the employee, or with another employee who has authority to investigate or correct the violation." (*Lawson*, at p. 709; see Lab. Code, § 1102.5, subd. (b).)

As the Supreme Court held in *Lawson*, *supra*, 12 Cal.5th 703, it is Labor Code section 1102.6, "not *McDonnell Douglas*," that "supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims." (*Lawson*, at p. 712.) Under section 1102.6, the plaintiff must first "'demonstrate[ ] by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action. [Citation.] Then, once the employee has made that necessary threshold showing, the employer bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." (*Lawson*, at p. 712.)

In explaining why a plaintiff need not satisfy the requirements set forth in *McDonnell Douglas*, the Supreme Court stated: "Under section 1102.6, a plaintiff does not need to show that the employer's nonretaliatory reason was pretextual. Even if the employer had a genuine, nonretaliatory reason for its adverse action, the plaintiff still carries the burden assigned by statute if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action. There is, then, no reason why whistleblower plaintiffs should be required to satisfy the three-part *McDonnell Douglas* inquiry— and prove that the employer's proffered legitimate reasons were pretextual—in order to prove that retaliation was a contributing factor under section 1102.6." (*Lawson*, *supra*, 12 Cal.5th at

pp. 715-716.)  The Supreme Court also explained *McDonnell Douglas* does not "govern at summary judgment for purposes of determining whether the plaintiff can meet the statutorily assigned burden of demonstrating that retaliation was a contributing factor in an adverse employment decision"; instead, "the parties' burdens of proof at summary judgment generally depend on their burdens of proof at trial." (*Lawson*, at p. 717.)

Walgreens attempted to meet its burden by arguing Walgreens' employment actions were "based on legitimate business reasons, such as budget and operational needs, and Gevargeza [had] no evidence to the contrary"—essentially following the second step of the *McDonnell Douglas* approach. That was not enough.  Walgreens had to show not only that Walgreens' actions were "based on legitimate business reasons," but also that it would have taken the same actions for those reasons even if Gevargeza "had not engaged in" the alleged whistleblower activities.  (Lab. Code, § 1102.6; see *Lawson*, *supra*, 12 Cal.5th at pp. 713-714 ["plaintiffs may satisfy their burden of proving unlawful retaliation" under Labor Code section 1102.5 "even when other, legitimate factors also contributed to the adverse action"].)  Moreover, because Walgreens would have the burden at trial to prove that fact by clear and convincing evidence, Walgreens had to "present evidence that would *require* a reasonable trier of fact" (*Aguilar*, *supra*, 25 Cal.4th at p. 851) to find it "highly probable" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996) the company would have taken the same actions regardless of Gevargeza's alleged whistleblower activities.  (See *Aguilar*, at p. 851 ["how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial"]; *Spinks v.*

34

*Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1053 ["'where the . . . ultimate burden of proof will be by clear and convincing evidence, the higher standard of proof must be taken into account in ruling on a motion for summary judgment or summary adjudication'"].)

Walgreens did not merely fail to explain how the evidence it submitted in support of its motion satisfied the applicable burden under section 1102.6; Walgreens failed to discuss any of the evidence that, according to Gevargeza, showed Walgreens retaliated against her for whistleblowing activities.  Therefore, Walgreens was not entitled to summary adjudication.  (See *Scheer v. Regents of the University of California* (2022) 76 Cal.App.5th 904, 915 ["Because the [employers'] moving papers in the trial court failed to apply the Labor Code section 1102.6 framework, they failed to meet their threshold burden."].)

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting the motion by Walgreens and Vargas for summary adjudication on each of Gevargeza's causes of action and for summary judgment. The trial court is directed to enter a new order (1) denying Walgreens' motion for summary adjudication on the causes of action for wrongful termination in violation of public policy and for violation of Labor Code section 1102.5; (2) granting Walgreens' motion for summary adjudication on the remaining causes of action; (3) denying Walgreens' motion for summary judgment; and (4) granting Vargas's motion for summary judgment. The trial court is also directed to rule on Walgreens' motion for summary adjudication on Gevargeza's claim for punitive damages and to enter judgment in favor of Vargas on the complaint. Walgreens' request for judicial notice is denied. Vargas is to recover his costs on appeal. Walgreens and Gevargeza are to bear their costs on appeal.


SEGAL, J.


We concur:


MARTINEZ, P. J.


FEUER, J.

36